On February 17, 1943, at about 5:30 P.M., Roy Leonard Walsdorf, a young man seventeen years of age, was riding a bicycle on the uptown roadway of Tulane Avenue in the direction of the Mississippi River. As he reached a point in the roadway approximately thirty feet from the intersection of Tulane Avenue and South Cortez Street, he was overtaken by a large truck, with trailer attached, owned by Louis. D. Perrett, Jr., of Edgard, Louisiana, and driven by Perrett's employee, Lawrence J. Julian, also of Edgard, which had been traveling in the rear of the bicycle and proceeding in the same direction. As the truck passed from the rear and to the left of Walsdorf, the trailer part thereof came in contact with the bicycle and, as a result, the young man was thrown from the bicycle and received personal injuries when the right rear double wheel of the trailer ran over his right foot.
Claiming that the accident and ensuing injuries were occasioned solely as a result of the negligence of the truckdriver — in operating the truck at an excessive rate of speed and in failing to afford the bicyclist sufficient room to the left in passing — the plaintiff, John Leonard Walsdorf, Jr., father of the young man, brought this suit against Julian, the driver of the truck, Perrett, the owner, and Highway Insurance Underwriters, the liability insurance carrier of Perrett, to recover the damages he sustained as a result of the accident and also on behalf of his minor son for the latter's personal injuries. He prayed for judgment in his own right for the sum of $11,451.04 and $30,000, for the use and benefit of his son.
In due course, the defendants appeared and admitted the happening of the accident but denied that it was caused through the fault of the truckdriver, maintaining that the latter was free from dereliction in the premises. They further set forth in the alternative that, if the court should find the truckdriver at fault in any particular, then plaintiff's recovery was nevertheless barred because his son was guilty of contributory *Page 783 
negligence — in that he was riding a bicycle on the public streets of New Orleans with a large automobile tire tied or attached to the handlebar thereof; in that he failed to use proper care and caution in riding his bicycle while the truck was in the act of passing, although he had been previously warned of the approach of the truck by the sounding of its horn and in that he suddenly veered from the straight path, from a place of safety, and allowed his bicycle to swerve or move into the roadway of Tulane Avenue, permitting it to collide with the trailer of the truck.
After trial in the district court on the foregoing issues, there was judgment in favor of plaintiff for $1201.04 in his own right and for the additional sum of $3250 damages for the use and benefit of his minor son. The defendants have prosecuted this appeal from the adverse decision.
A careful examination of the record in the case, which is quite voluminous, reveals that the sole matters presented for decision are questions of fact. In truth, as we shall hereafter demonstrate, the ultimate question to be determined, respecting negligence, is a very narrow one as many of the salient facts are not in dispute. That question relates exclusively to the clearance between the truck and the bicycle at the time the truckdriver overtook and passed the young man.
The scene of the accident is the uptown roadway of Tulane Avenue at a point near the intersection of South Cortes Street. Tulane Avenue is a broad, double paved thoroughfare, separated by a neutral ground which accommodates streetcars operated by New Orleans Public Service, Inc. It is one of the main traffic arteries leading from the business district of New Orleans to points west and runs from the Mississippi River towards Jefferson Parish where it connects with the Airline Highway which extends to Baton Rouge. The downtown roadway accommodates outbound traffic and the uptown roadway, on which the accident occurred, is provided for inbound traffic. The width of the uptown roadway is twenty-seven feet from the banquette curb to the curb of the neutral ground. There is located on the uptown river corner of Tulane Avenue and South Cortez Street, at or near the point where the accident happened, a used car parking lot and, on the day of the accident, there were several cars parked in front of this establishment, parallel to the banquette curbing. Young Walsdorf had previously left his home on Labarre Road in Jefferson Parish on his bicycle, which had an automobile tire fasttned to the basket and handlebar thereof, and had driven over the Airline Highway into Tulane Avenue from South Carrollton Avenue, it being his intention to take the automobile tire to a shop in New Orleans for repairs. He was admittedly traveling at a slow speed of approximately five miles per hour and was riding on the righthand or proper side of the uptown roadway as close to the parked automobiles as safe driving would permit. Just as he reached the parking lot situated on the corner of Tulane Avenue and South Cortez Street and was passing the automobiles parked adjacent to the curb on his right, the truck and trailer operated by Julian overtook him from the rear and, while passing to his left, the trailer part of the vehicle struck or contacted either the bicycle or his left shoulder, causing him to lose his balance and be thrown under the trailer where the right rear wheel ran over the bicycle and his right foot.
The truck and trailer involved in the accident is a large vehicle, having an overall length of 32 4-1/2"; the trailer itself being 20' 6" long. The truck and trailer consist of two separate units of equipment connected by a wheel. The truck has two sets of wheels, single in the front and double in the rear, the latter supporting the front end of the trailer. The trailer is equipped with two double wheels in the rear. The front part of the truck is 71 3/4" wide and the trailer is 88 1/2" in width at the front and rear. This vehicle was heavily loaded with three hundred twenty cases of empty beer bottles. Julian, the driver, a colored man in the employ of Perrett, was accompanied by a helper, another colored man named Camille Young, who was sleeping in the seat next to the driver.
Julian had left Donaldsonville, Louisiana, with the loaded truck at about 1:00 P.M. on the day of the accident with the intention of driving to the Jackson Brewing Company. He says that he was driving on Tulane Avenue at a speed of between fourteen and fifteen miles per hour; that, when he reached South Scott Street, he noticed young Walsdorf on the bicycle riding on the righthand side of the street very near to the parked cars; that, when the truck was about fifty to seventy-five feet (in other parts of his testimony he says twenty feet) *Page 784 
to the rear of the bicycle, he blew his horn for the purpose of warning the bicyclist of his approach; that he continued on in the middle of the roadway and that he passed the young man at a point about twenty to twenty-five feet from the corner of South Cortez Street; that, as he passed the bicycle, he felt a bump and heard a noise; that he thought that he had run over a brick in the road and that he immediately brought his truck to a stop on the riverside of South Cortez Street, dismounted therefrom, and then learned for the first time that he had run over the young man. He further states that there was an eight-foot clearance, between the cars parked on the right and the right side of the truck, at the time he passed the bicycle; that the left wheels of his truck and trailer were two or three feet from the neutral ground curbing and that, after the accident, the young man and bicycle were in the middle of the roadway at a place where any oncoming vehicle would have run over him. The helper, Young, says that he was sleeping at the time of the accident and knows nothing about it; that Julian roused him from his sleep, as soon as the truck was brought to a stop, telling him that the truck was making a funny noise and that he did not leave the truck and go back to determine what had happened.
The testimony of Julian strikes us as being most unsatisfactory. He contradicted himself many times in his statement and, after a searching cross-examination, appeared to be hopelessly confused as to distances and as to his actions before, and at the time of, the accident. For instance, he says in part of his testimony that he saw young Walsdorf when the truck was one hundred fifty feet to the rear and that he blew his horn when he was seventy to seventy-five feet away. Later on, he states that he did not blow his horn until he was twenty or twenty-five feet away. Again, in testifying about the clearance he gave to young Walsdorf while passing him, he says in one part of his statement that there was eight feet between the truck and the bicycle and that he drove straight on without swerving the truck to the left. In other parts, he says that he swerved to the left as he approached the bicycle; that, after swerving, there was a four-foot clearance and that, had he not swerved, there would have been about two feet clearance. Then, too, we find that Julian taxes our credulity when he asserts that the reason why he stopped the truck immediately after the accident was not because he knew he had run over the young man but because he thought he might have rolled over a brick, which had the effect of shaking the empty beer bottles in the trailer. We doubt that the mere striking of a brick in the roadway would be an occurrence of such importance as to cause a truckdriver to immediately come to a stop and rouse his sleeping helper to tell him of the event. It is more probable that Julian was suffering somewhat from driver's fatigue; that he did not notice the presence of the bicycle or the close proximity of his truck to it until an emergency had been created and that, when he suddenly became aware that he had passed too close to the young man and that an accident had happened, he made an emergency stop and came to the assistance of his victim.
Furthermore, the testimony given by young Walsdorf impresses us most favorably. He says that he was driving his bicycle slowly on the righthand side of the roadway and as near to the parked automobiles on his right as safety would permit; that, as he was in the act of passing these parked automobiles, he heard "a big rumbling noise," saw the front fender of the truck and thus became instantly aware that the truck was in the act of overtaking and passing him, that, just at that time, he heard the horn of the truck blow and that the trailer part thereof struck his left shoulder, throwing him to the ground. Young Walsdorf was subjected to a vigorous cross-examination by defense counsel which failed, inour opinion, to tarnish or destroy the verity of his clear evidence in any particular. He was confronted with a statement, which he gave to the police after he was in the hospital, wherein he asserted that the trailer struck the handlebar of the bicycle. Counsel for defendants make much ado about this statement, claiming that the young man's subsequent evidence that the trailer struck his left shoulder tends to discredit the veracity of his testimony. We cannot follow counsel as we do not perceive the variance to be of much importance. Moreover, young Walsdorf explains that, at the time he gave the statement to the police, he was under the impression that the truck struck the left handlebar of the bicycle, but later, on reflection, he believes that it struck his left shoulder. This is not unnatural. In times of stress and in the short intervals elapsing *Page 785 
during the occurrence of an accident, a person's first impressions may not be as accurate as his subsequent belief resulting from a calm rehearsal of events. In any case, we regard the divergence in statement as inconsequential as it makes no difference in liability whether the trailer struck the bicycle's handlebar or the boy's shoulder.
Plaintiff produced, in addition to the testimony of his son, Otto Heinsz and Gerald Meibaum, who assert that they were eyewitnesses to the accident. Meibaum and Heinsz were driving in an automobile on the downtown roadway of Tulane Avenue in the direction of Jefferson Parish and had reached the corner of South Cortez Street at the time the truck was passing young Walsdorf. They say that they saw the young man riding his bicycle near the parked cars; that they saw the truck pass him; that, immediately thereafter, they observed the young man on the ground and that they assisted him into their car and brought him to the hospital. They further testify that the truck was being operated at a speed of thirty-five to forty miles per hour.
The testimony of these witnesses is strenuously attacked by counsel for defendants. However, we find it unnecessary to comment at length on their evidence. It suffices to say that we believe that young Walsdorf's testimony which, when considered in connection with and weighed against the statement of Julian, is adequate to warrant the conclusion that the accident occurred solely as a result of Julian's negligence in passing too close to the bicycle during the overtaking operation. Certain physical facts are of importance. The roadway was twenty-seven feet wide; the parked cars occupied approximately seven feet thereof, leaving a space of twenty feet for the safe passage of the bicyclist and the truck. If Julian was driving his truck two feet from the neutral ground at the time he passed young Walsdorf, there would have been a space of over ten feet between the parked cars and the right side of the truck and trailer, which would have been more than ample clearance. However, we do not believe that Julian provided such a space. On the contrary, we are impressed with the view that he was careless and inattentive; that he did not observe or realize the close proximity of the truck and trailer to the bicycle at the time he attempted to overtake and pass it and that the sole and proximate cause of the accident was his failure to keep alert and give the young man a reasonable clearance between his truck and the parked automobiles' to safely steer the bicycle.
[1] Counsel of defendants have written a long brief in which they suggest that the probabilities are that young Walsdorf attempted to hitch a ride on the rear of the trailer and that he lost his balance in so doing. The difficulty with this argument is that there is no evidence to sustain it. Then again, counsel, reminding us that the burden was upon plaintiff to prove with certainty that the accident occurred as the result of the negligence of Julian, say that the evidence fails to exhibit that Walsdorf "was struck from behind" as alleged in the petition. For our part, however, we feel that plaintiff's case has been established with legal certainty by the testimony of young Walsdorf, which is sufficient, in itself, to sustain the resolution of the trial judge.
[2, 3] Counsel further contend that Walsdorf was guilty of contributory negligence — in that he was carrying an automobile tire on the handlebar of the bicycle. They claim that this was a violation of Paragraph 11, Article X of the Traffic Ordinance of New Orleans which makes it unlawful for the operator of a bicycle to carry another person upon the handlebar or the frame or tank of the vehicle. We cannot see that the provision depended upon is pertinent to the case as nothing is mentioned therein respecting the transportation of a tire on the handlebar of a bicycle. Furthermore, it is too well settled to require the citation of authority that the mere violation of a City Ordinance will not be considered as negligence barring recovery unless it has causal connection with the accident and injury. There is nothing in the evidence submitted by either of the litigants to suggest that the carrying of the tire by young Walsdorf interfered with his prudent handling of the bicycle.
[4] Aside from our own convictions in the case, it is apparent that, even if we were in doubt, we would not be authorized under the jurisprudence to conclude that the district judge was guilty of manifest error in resolving the facts in plaintiff's favor. The judge saw the witnesses and heard them testify. Consequently, he was in a far better position than we are to determine the credibility of their statements. We not only fail to discern manifest error in his *Page 786 
conclusion, but are satisfied that his judgment is correct.
[5] Defendants further complain that the damages allowed by the district judge are excessive and plaintiff has answered the appeal, claiming that the award is inadequate. While it appears young Walsdorf was painfully injured, the award of $3250 given him by the district judge represents just compensation for his hurts and we find it to be commensurate with other allowances approved by this Court for similar injuries. The award in favor of plaintiff for his expenses is fully sustained by the evidence.
For reasons assigned, the judgment appealed from is affirmed.
Affirmed.